S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**GREGORY R. NYHUS, OSB #913841**
Assistant United States Attorney
Greg.R.Nyhus@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 717-1117
Attorneys for United States of America

### UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:11-CR-00105-01-MO** |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR ORDER TO TRANSFER SUPERVISED RELEASE TO THE MIDDLE DISTRICT OF** |
| **ALLEN LEE BRYSON, Jr.,** | **TENNESSEE** |
| **Defendant** | |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, through Gregory R. Nyhus, Assistant United States Attorney (AUSA) for the District of Oregon, provides this memorandum in response to defendant's request for an order transferring his supervised release to the Middle District of Tennessee.

## I.    BACKGROUND

On February 17, 2012, defendant entered a plea of guilty to the Indictment, which alleged the crime of  possession with the intent to distribute heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).  On that same date, defendant was found in violation his supervised release in Case No. 6:02CR60020 (the underlying conviction was for Felon in Possession of a Firearm) for and his supervised release in Central District of California Case No.

04-632-R, transferred to this District and renumbered 3:10-CR00-432-MO (the underlying conviction was for Riot at a Federal Penal Facility).  Defendant was ultimately sentenced to a term of 84 months, based on information previously submitted to the Court for its review.

During the course of supervision on both of defendant's previous convictions, the government notes that in June 2007 defendant's request for release to his sister's residence in Tennessee was denied by the U.S. Probation in Nashville.  Defendant's sister was a small business owner in the area, but the transfer was denied because defendant lacked sufficient ties to the area.

On September 18, 2009, defendant's request for release to his cousin's residence in California was denied by U.S. Probation in San Bernadino, California.  As a result, on January 21, 2010, defendant was transferred to the Oregon Halfway House (OHH) for completion of his custody sentence but returned to closer custody after he violated house rules.

On August 16, 2010, defendant was released to supervision in Portland and placed at OHH for transitional assistance.  On August 19, 2010, defendant was terminated from the halfway house for rules violations.  On September 2, 2010, defendant moved into a southeast Portland Oxford House.  During the remaining course of his supervision, approximately six months, defendant demonstrated a spotty record of compliance at best:  defendant failed to submit five required urine specimens, admitted to using marijuana, and submitted diluted urine specimens which could not be accurately tested.  A supervised release violation warrant was requested on February 11, 2011, when defendant was arrested for the instant offense.  His projected release date is April 20, 2017.

During the course of defendant's current term of incarceration, he again applied for a transfer of supervision on his release to the Middle District of Tennessee.  According to

documents provided by defendant, this request was denied because neither defendant nor his wife has any ties to the area (his wife having moved to the area solely to facilitate visitation with defendant during his incarceration), and that his new conviction follows his second and previously denied requests for a transfer.

Defendant, now, for the fourth time, requests that this Court order that his supervision be transferred to the Middle District of Tennessee.

## II.    DISCUSSION

At the outset, it is important to note that this Court retains jurisdiction over defendant's offense and sentence and, accordingly, can modify the terms of the probation at any time.  See 18 U.S.C. §§  3583, 3605.  See *United States v. Bainbridge*, 746 F.3d 943, 2014 U.S. App. LEXIS 4227 (9th Cir. Idaho 2014) (district court must consider the listed 18 U.S.C.S. § 3553(a) factors, follow the procedure outlined in Fed. R. Crim. P. 32.1, and ensure that the modified conditions are consistent with the requirements applicable to all conditions of supervised release).

Moreover, § 3583(e)(2) permits a district court to modify the conditions of supervised release at any time prior to the expiration or termination of the term of supervised release. Section 3583(e)(2).  Because a changed circumstances requirement should not be read into 18 U.S.C.S. § 3583(e)(2), the court has broad discretion to modify the conditions of supervision. *Id.* The *location* of probation jurisdiction is not such a term or condition, however.

Title 18 U.S.C. § 3605 governs transfers of probation jurisdiction.  This statute provides:

> A court, after imposing a sentence, may transfer jurisdiction over a probationer or person on supervised release to the district court for any other district to which the person is required to proceed as a condition of his probation or release, or is permitted to proceed, with the concurrence of such court.

The statute gives a court discretion to order a transfer, but conditions transfer upon the acceptance of jurisdiction by the court to which the transfer is made, and upon selection of a

district to which the probationer was required or permitted to proceed. *United States v. Ohler*, 22 F.3d 857, 858-859 (9th Cir. 1994). Accordingly, defendant has no *right* to such a transfer, but is subject to the deference of the corresponding jurisdiction to which he seeks transfer. In the instant case it appears that, on at least three occasions, defendant's requests have been denied.

The government applauds defendant's recognition of the need to limit the influences in his life that have led to a history of poor decisions and his desire to establish a support network that is favorable to him. His ability to form those relationships, however, may be limited by the willingness of the Middle District of Tennessee to accept his supervision. While the government is encouraged by defendant's efforts, the government is likewise unable to effect any change in the position of the candidate jurisdiction, and therefore neither supports nor opposes defendant's motion.

## III.    CONCLUSION

Because a transfer of supervised release to another jurisdiction requires the support of the receiving jurisdiction, and the government recognizes that the supervising authority is in the best position to determine a candidate's eligibility for such a transfer, the government therefore takes no position on defendant's motion.

Dated this 16th day of May 2014.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

*s/ Gregory R. Nyhus*

GREGORY R. NYHUS, OSB #913841
Assistant United States Attorney